Parker, J.
This case has been submitted upon the notes of counsel, and I will consider briefly the several objections made to the judgment, omitting one or two which seem to me to have nothing in them; such as that the plaintiff did not set out the usages and customs alluded to in his declaration, and that in the first bill of exceptions the court says, that certain evidence was objected to by the defendant “ on the grounds and reasons *579 set out in the third instruction asked,” — without repeat-mg them.
The case itself is one of no little interest to the hirers, and to the letters to hire, of slaves. The evidence proved that the defendant hired the plaintiff’s slave from the 1st of January 1829 to the 25th of December of that year. There was no special agreement made at the time, how or where he was to be employed ; but many circumstances rendered it probable that he was to be employed that year, as he had been the year before, on the defendant’s plantation, in the ordinary agricultural and domestic business of a farm, without being-subjected to extraordinary risks. The hire to be paid for him in 1S29 was the same that had been paid the year before, when the boy was smaller, and was no more than was usually paid for boys of his age and size, kept on farms in Wood county, if as much. The slave belonged to an infant, and was hired to the defendant by John Stephenson, the plaintiff’s stepfather, who was not his guardian de jure or de jacto, and had no legal authority to contract for him, although after he came of age (which was subsequent to the bringing of this action) he sanctioned the contract of hiring. On the 15th of December, only ten days before the expiration of the term of hiring, the defendant set out with two boats loaded with produce, bound for Cincinnati in Ohio, and thence to markets on the Mississippi, taking the boy with him, and only two others to manage the two boats. On their voyage down the Ohio, and soon after they passed below the line of Wood county, the slave was accidentally drowned. The defendant pursued his voyage to Cincinnati, went thence to New Orleans, and did not return to Wood until the spring of 1800.
On this state of facts, connected with certain declarations of the defendant before he set out, admitting his responsibility in case of the loss of the slave, the jury found a verdict for the plaintiff, and the court gave judgment.
*580 The first objection to the judgment is, that there was a misjoinder of counts in the declaration, and that the court ought to have sustained the defendant’s demurrer. The first count is in trover, and it is contended that the two last are in assumpsit. The two last counts do state an agreement for the hire of the slave, and for his redelivery on the 25th of December; but that agreement is not stated as one made by the plaintiff, or for him or on his account, but by one John Stephenson, whose authority is no where recognized. It seems to have been stated, to shew that the slave came into the defendant’s possession without a trespass, and that he was bound to redeliver him at Christmas. The failure to return him is averred, and the injury is alleged in carrying him out of the county, and placing him in a boat destined for New Orleans, whereby he was wholly lost to the plaintiff. These are, I think, substantially good counts in case, and were not improperly joined to that'in trover.
The first bill of exceptions is to the reception of the evidence of the two witnesses Nils and Neale. It is to be recollected that the plaintiff, after coming of age, had recognized the contract as made by Stephenson, — a circumstance which does not affect the pleadings in the cause, but may affect the evidence: and it is for the benefit of the defendant to consider it in this light; for otherwise, having hired the slave from a person having no authority to contract for the infant, and having lost him in his employment, in the manner and under the circumstances proved, he would be left without a shadow of defence. The court admitted the evidence of these witnesses, for the purpose of enabling the jury to ascertain the true interpretation of the contract of hiring, and the defendant’s own understanding of it; and I think their evidence was not only admissible for this purpose, but to prove the defendant’s possession of the boy, and the fact that he was taking him on a distant *581 and perilous voyage, without express authority, and that be did contemplate the possibility, if not probability, of losing him.
The testimony set out in the second bill of exceplions I also think was admissible and relevant. Before offering it, it had been proved that the plaintiff had elected to consider the contract of hiring as valid. The amount of the hire had been ascertained, and that it was no more than reasonable, when ordinary risks in farming business in Wood county were in the contemplation of the parties. To strengthen this presumption, and as tending to shew that no extraordinary risk was contemplated, the plaintiff offered evidence that slaves hired for the purpose of being employed in the manufacture of salt, the digging of coal, or in voyages down the Ohio and Mississippi rivers, brought much higher wages than those employed in the county, for agricultural or domestic purposes, and that when they were to be engaged in those other avocations, there was generally a stipulation to that effect. This evidence I consider relevant to the point of enquiry. The great, and general rule in admitting testimony is, that all facts and circumstances upon which any reasonable presumption or inference can be founded are admissible evidence, however small the weight the court may attach to them. Presumptions may be derived from the artificial course and order of human affairs, and the customs of a particular class of people, because a probability arises that the customary course of dealing has been adopted, and that the particular act done was in the usual routine of business, and with its ordinary concomitants. 1 Starkie’s Evid. 17. 35. 36. The object in this case was to ascertain whether, at the time of hiring, the parties contemplated any extraordinary risks; and the fact that a difference in the amount of the hire was generally made when slaves were to be employed out of the comity, in certain purposes attended with greater hazards, seems to me to be relevant if not very strong testimony.
*582 The instructions excepted to and stated in the third . . . . . . . bill oí exceptions were in my opinion entirely correct. The defendant then asked the court to give seven instructions to the jury, explanatory of the law of the case; which were given absolutely, or under certain modifications, or refused. To those which were given, the defendant cannot object. The propriety of the refusal to give others, or of giving them only under certain modifications, depends on the nature of this particular species of bailment, and the rights and duties growing out of it. My opinion on that point will sufficiently indicate my agreement or disagreement with the court below, without referring to the instructions in detail s prefacing my remarks however with the observation, that if it appears from all the instructions taken together, that the law was stated correctly to the jury, I will not cavil at particular isolated expressions, which taken by themselves might be considered erroneous.
The object of the defendant was to induce the court to instruct the jury, that a general bailment of a slave for hire places the bailee in the condition of a master for the period of bailment agreed on, and entitles him to use or employ him in any way, or at any place, where or in which the master or owner could lawfully use or employ him. His further object was to induce the court to say to the jury, that if the bailment was not restricted by special agreement at the time of making it, no declarations of the defendant, or evidence of facts and circumstances, could be resorted to for the purpose of explaining the real nature of the bailment, in derogation of the right of the bailee to carry the slave where he pleased, and to employ him in any business however hazardous, provided a man of ordinary prudence could or would use his own absolute property in the same manner. I am of opinion that the court was right in resisting these efforts.
*583 It cannot be maintained that the bailee of a slave for hire has all the rights of a master during the period of bailment. He must not only observe the covenants of hiring, but is bound to perform what has been omitted to be inserted, but ought reasonably to be done. Cooper’s Justinian, lib. 3, tit. 25. § 5. Such a bailee must take care to use the property according to the fair understanding when he hired it; and if, from his own declarations, or any facts or circumstances, it appears that it was hired for one purpose, and lias been used for another attended with greater danger of loss or detriment, he is responsible to the owner, in the event of such detriment or loss. The hirer gains only a transient qualified property in the thing hired, and must use it prudently and reasonably. 1 Tucker’s Comm. 372. Jones on Bailments 85. and passim. If this is the law of the locatio-condv.ctio rei, it is emphatically the law of hiring persons. Our law in many instances recognizes a distinction between property in things and persons. “A slave,” says chief justice Marshall, “has volition and feelings, which cannot be disregarded or overlooked in conveying him from place to place.” Boyce v. Anderson, 2 Peters 154. “ Slaves,” says judge Brooke in Allen v. Freeland, 3 Rand. 178. “ are not only property, but rational beings, entitled to the humanity of the court when it can be exercised without invading the right of property.” These observations, though applied to other cases, are not foreign from this. The master or owner of a slave is bound to treat him as an intelligent, sentient being, and will not be presumed, without proof, to place him under the dominion of a temporary bailee, to be used how and where lie pleases. If he hires him with a reasonable expectation that lie will be employed in a business comparatively healthy and free from danger to life, it ought not to be permitted to the bailee to immure him in an unhealthy mine, or to subject him to the hazards of distant voyages, and the perils of a bu *584 siness he has never followed. Humanity to the slave requires this, and the security of the rights of property imposes other restrictions on the bailee, for the sake of the owner. A slave hired in a state recognizing the rights of the owner, cannot be taken to England, where the moment he touches the soil he is disenthralled, or to one of the non-slaveholding states, where the dangers of seduction and loss are probable and imminent. If the bailee encounters this risk, and the slave is lost, the loss must fall on him who braves the consequences. In the case at bar, the jury might reasonably have inferred that the fair understanding of the contract was to employ the boy in agricultural or domestic purposes, in the county of Wood or its vicinity. The commencement of a voyage to Cincinnati and New Orleans was a violation of that understanding, subjecting him to risks and dangers not contemplated or estimated when the hiring took place. He was lost to the owner in the prosecution of that unauthorized use of him, and I am of opinion that the bailee is responsible for the loss, and that there is no error in the instructions or the judgment of the court.
Brockenbrough and Brooke, J. concurred.
Tucker, P.
At the threshold of this case we are met by a demurrer to the whole declaration for misjoinder, the first count being the ordinary count in trover, and the two others counts in assumpsit, as is alleged by the counsel for the plaintiff in error. If this be true, the declaration is bad on general demurrer, in arrest of judgment, or upon error. 1 Chitty’s Plead. 236. And I am free to say that the language of those counts is much calculated to lead to the conclusion that they are in assumpsit. There is one thing, however, decisive of the contrary. To make them counts in assumpsit., there must be an agreement laid between the parties, or a pro *585 mise from the defendant to the plaintiff for a.consideration. In Coggs v. Bernard, 2 Ld. Raym. 909. the declaration laid a promise and breach, but wo consideraiion. Without consideration there was no agreement, though the delivery of the cask of brandy, with a promise safely to remove it, constituted a bailment, with the obligation to perform the act carefully, and the failure was a breach of duty. Accordingly, the plea was not guilty, and the action was treated as a tort. So in Corbett v. Packington, 6 Barn. & Cres. 268. justice Bayley, for the reasons just given, considers the count in Coggs v. Bernard as “ rightly held to be a count in tort, one essential ingredient to a count in contract, viz. a consideration, not being stated.” Now in this case there is no shadow of agreement laid, between plaintiff and defendant. There is an agreement laid indeed between Stephenson and the defendant, but there is not one syllable in the declaration connecting Stephenson with the plaintiff, or shewing any authority as guardian de jure or defacto, or any request from the infant himself, or any ratification of the agreement after he came of age ; nor is it even stated that the contract was made for the infant, so as to leave it to be inferred that by suing upon the agreement, he assented to and ratified it. There being no agreement therefore, the counts, whether good or bad, are not in assumpsit but in tort. Whether good or bad is unimportant, as there was one good count, viz. the count in trover, which is of itself sufficient to sustain the action. \
We come next to the demurrers to the two additional counts. Considering them, .as we have done, as counts in tort, are they good counts ? They are certainly very informal, but I think they are in substance good. In the action for the tort, only two things are necessary: the allegation that the property came to'the hands of the defendant (without a trespass) and the failure to redeliver it to the plaintiff. Now here the counts state *586 that the defendant received the slave from Stephenson; an<^ whether Stephenson committed a trespass or not, the defendant was no trespasser. The first inquisition, then, is satisfied. Secondly, though the agreement stated between the defendant and Stephenson constituted no contract between the plaintiff and defendant, yet by that agreement it was the duty of the defendant to return the slave at Christmas. Indeed it was his duty to return him at any rate, and his failure to do so was a wrong to the plaintiff, for which he had a right of action ; and the allegation that the defendant “ carried him out of the county, and placed him on board of a boat destined to New Orleans, whereby he failed to redeliver the slave, and that he never has delivered him, hut that the slave is wholly lost to him,” is surely a sufficient allegation of injury. I consider the counts therefore as substantially good, though certainly very informal.
We come next to the exceptions. The first is to the introduction of the evidence of Dils arid Neale. It is not stated for what purpose the testimony was offered ; but putting the agreement out of the question, it was relevant testimony to prove Spencer's possession of the boy, and the fact that he was in the act of taking him off on the voyage, with a full knowledge of the wrong, and a perfect consciousness of his responsibility for him should he be lost. ^ •
The third exception was to a motion of the plaintiff to instruct the jury, that if they believed it was the understanding of both parties that the slave should labour on the farm, and that the defendant employed him as a boatman, whereby he was drowned, they must consider the defendant liable; which instruction was given with the qualification that they must be satisfied the employment of the slave as a boatman was in violation of the contract, and an abuse of the temporary right of the defendant. This instruction was not erroneous. The defendant himself having introduced, or the plaintiff *587 having introduced without objection, evidence of this agreement, I am of opinion that the instruction was properly given.
The second exception I have more doubt about; but I yield my doubts to the convictions of my brethren, who all concur upon the point.
As to the fourth bill of exceptions, I am of opinion that the court properly refused to give the first and sixth instructions moved for. The second was given as asked. The rest of the instructions moved for were properly modified by the court; for I am of opinion that a farmer, resident even on the Ohio river, having hired a slave generally, without restriction upon his use, has no right to send him beyond the limits of the state, upon a hazardous voyage to another and distant state; and that if he does so, and the slave is accidentally drowned in the course of the voyage, though within the limits of this state, he is responsible for the value to the owner, even though no negligence or want of care should appear on his part.
Upon the whole, I am of opinion to affirm the judgment.
Cabell, J. concurred. Judgment affirmed.